IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**JONIE LEE SMITH,**

    **Plaintiff,**

**v.**                                                **Civil Action No. 3:16-cv-11868**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 8) and Defendant's Brief in Support of Defendant's Decision (ECF No. 9). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Jonie Lee Smith, filed an application for DIB on October 29, 2013. Claimant alleged disability beginning October 1, 2009. The claim was denied initially on February 21, 2014, and upon reconsideration on June 16, 2014. Claimant filed a request for hearing on July 1, 2014. A video hearing was held on April 28, 2015. Claimant appeared in Huntington, West Virginia, and the Administrative Law Judge presided over the hearing from St. Louis, Missouri. The Administrative Law Judge (ALJ) denied Claimant's applications on June 12, 2015 (Tr. at 10-20). The Appeals Council denied Claimant's request for review on October 3, 2016 (Tr. at 1-3).

Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).[1]

### Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant

---

[1] On February 28, 2018, the undersigned entered Proposed Findings and Recommendation (ECF No. 10). On March 9, 2018, Defendant filed Objections to the Magistrate Judge's Proposed Findings and Recommendation (ECF No. 11). On March 29, 2018, the District Judge entered a Memorandum Opinion and Order rejecting the Proposed Findings and Recommendation and remanding this case to the undersigned for further proceedings consistent with the Memorandum Opinion and Order (ECF No. 12). The Memorandum Opinion and Order directs the undersigned to consider and resolve Claimant's assertions that the ALJ's decision is not supported by substantial evidence because (1) the ALJ's residual functional capacity evaluation did not address all of her limitations and (2) the ALJ failed to properly consider the opinion of the vocational expert who testified that she is unable to engage in substantial activity. (*Id.*)

establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> > (1)    Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>> Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe

impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date of October 29, 2013 (Tr. at 12). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: opioid dependence; cocaine abuse, major depressive disorder; posttraumatic stress disorder; and asthma. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 13). The ALJ then found that Claimant has a residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations (Tr. at 15). The ALJ found Claimant would have the following limitations: Claimant must avoid concentrated exposure to extreme heat and extreme cold. Claimant must avoid concentrated exposure to irritants such as fumes, dusts, odors, gases and poorly ventilated areas. The claimant

can perform simple, routine tasks in a work environment free of fast-paced production requirements and involving only simple, work-related, decisions with few, if any, workplace changes. The claimant can occasionally interact with the public and can occasionally interact with coworkers and supervisors. (*Id.*) The ALJ found that Claimant has no past relevant work (Tr. at 18). The ALJ held that Claimant can perform work in positions such as a hand packager, electronics worker, bottling wine attendant and escort vehicle driver (Tr. at 19). On this basis, Claimant's application was denied (Tr. at 20).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on August 14, 1978. On the date of the hearing, Claimant was 36 years old (Tr. at 30). Claimant was married but separated from her partner (Tr. at 30-31). Claimant has a driver's license, however, she doesn't drive (Tr. at 32). Claimant does not own a vehicle. (*Id.*) In school, she last completed the eighth grade. (*Id.*)

Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

On September 11, 2013, Zachary Hansen, M.D., treated Claimant for vomiting and diarrhea (Tr. at 252). Claimant reported that she is addicted to heroin and feels sick when she attempts to stop. Prior to using heroin, she was snorting and injecting pain pills. (*Id.*) Dr. Hansen diagnosed Claimant with pain in limb, constipation, allergic rhinitis and opioid dependence (Tr. at 253). Dr. Hansen referred her to the Prestera Center for evaluation and possible treatment, and provided Phenergan in case she wished to detox on her own. (*Id.*)

Claimant began treatment for her addiction at the Prestera Center beginning September 12, 2013 (Tr. at 269). Claimant reported using heroin and stated that "it just seems like I'm doing it to keep from getting sick" (Tr. at 276). Claimant reported using other opiates "because she had pain from endometriosis" (Tr. at 278). Claimant was recommended to complete detox and agreed to apply for the program (Tr. at 300).

Kambiz Soleymani, M.D., at the Prestera Center, diagnosed Claimant with opioid dependence, major depressive disorder, severe without psychotic features, and posttraumatic stress disorder (Tr. at 302). Dr. Soleymani signed the diagnosis offered by Lorena Blanco, B.A., who diagnosed post traumatic stress disorder (Tr. at 348).

On September 20, 2013, Claimant saw Lora Dunford, M.A., at the Prestera Center, for individual therapy. Ms. Dunford's notes reflected a treatment plan to "establish a sustained recovery, free from the use of all mood-altering substances" (Tr. at 305).

On October 12, 2013, Claimant saw Dr. Soleymani for treatment (Tr. at 306-308). Dr. Soleymani diagnosed Claimant with opioid dependence, major depressive disorder, cocaine abuse and post traumatic stress disorder (Tr. at 308). Dr. Soleymani wished to start psychiatric medication (Tr. at 309). He further indicated that Claimant needed treatment for addiction through counseling. (*Id.*)

On October 19, 2013, Claimant reported to Dr. Soleymani that she was doing better, but still had "bouts of depression and anxiety" (Tr. at 321). Dr. Soleymani prescribed Trazodone, and told Claimant that she needed more time taking her medications to feel the effect of the antidepressants if she remained sober and clean (Tr. at 323).

On October 25, 2013, Claimant reported to Dr. Soleymani that she was doing better since taking Trazodone (Tr. at 325). She was not as depressed or anxious, had no cravings, was sleeping well with Seroquel, and was not abusing opioids. (*Id.*) On November 22, 2013, Claimant reported to Dr. Soleymani that she had swelling in her fingers when taking Trazadone, although it is helpful with her anxiety (Tr. at 329). On November 27, 2013, Claimant was transferred to a different program; while she had not been compliant with substance abuse treatment recommendations, she was compliant with medication management (Tr. at 340).

On December 6, 2013, Claimant requested that Dr. Soleymani restart Trazodone because it helped with her anxiety (Tr. a t 333). At that same time, Claimant reported no major problems with depression, mood swings, irritability or anxiety. (*Id.*) Dr. Soleymani noted that Claimant seemed to be doing well (Tr. at 335). It was noted that Claimant "says she is not abusing." (*Id.*)

Claimant underwent a consultative examination with psychologist Penny Perdue, M.A., on February 17, 2014 (Tr. at 360-364). Claimant arrived at the evaluation with a friend, who drove her to the assessment (Tr. at 360). Claimant reported the following:

> [A] history of anxiety and depression with concurrent onset that started prior to age 8 years (due to being physically abuse[d] by her uncle at age 8 years and raped by a cousin at age 12). She said that she would pray to die as a little girl. Symptoms are reported to occur every day and last all day (no period of remission reported since onset by symptoms slightly improved with medication) (Tr. at 360).

Claimant reported that as a child, her mother would not permit her to be evaluated for special education. (*Id.*) Claimant reported no history of past therapy or counseling (Tr. at 361). Claimant stated that she was currently seeing a psychiatrist at the Prestera Center and that she wished she "had done it a long time ago." (*Id.*)

On mental status examination, Claimant was dressed casually with adequate grooming and hygiene; was cooperative; interacted with the examiner in an appropriate fashion; had adequate eye contact; adequate verbal responses; normal and quiet speech; was oriented to person, place, date, and situation; and had a full affect; with a somewhat depressed mood with anxiousness during testing; and poor insight and impaired judgment (Tr. at 362). Claimant had an average rate of thoughts and no pathology of thought process, though her content appeared to reflect her belief that nothing works out the way she wants. (*Id.*) Her immediate memory was within normal limits, and she recalled 4 of 4 unrelated words, although her recent memory was deficient, recalling only 1 of 4 unrelated words after a 5 minute delay. (*Id.*) She had some difficulty in concentration (Tr. 362).

Following WAIS-IV testing, Claimant obtained a verbal comprehension score of 61, working memory score of 58, perceptual reasoning score of 75, processing speed score of 76

and full scale IQ of 62 (Tr. at 363). Ms. Perdue indicated that the test scores were a slightly lower estimate of Claimant's cognitive functioning due to her slow pace and possible anxiety, and were not consistent with her ability to express herself. (*Id.*) Ms. Perdue noted that Claimant was able to understand and follow the simple verbal instructions. Ms. Purdue's diagnoses included major depressive disorder, single episodes, severity unspecified, anxiety disorder, borderline personality traits, and borderline intellectual functioning vs. mild intellectual impairment. Ms. Perdue noted on testing, Claimant's pace was slow, and persistence was mildly deficient (Tr. at 364). Ms. Perdue's prognosis for Claimant was "poor." (*Id.*)

On February 20, 2014, state agency psychological consultant Jim Capage, Ph.D., reviewed the record and opined that Claimant was capable of learning and performing at least simple, routine, unskilled, 2 to 3 step work-related activities (Tr. at 78). He opined that such tasks should be low stress, with no complex decision making, no supervisory responsibilities, and no fast-paced production quotas. (*Id.*) Dr. Capage further noted that she was best suited to work on her own in a setting that called for no more than occasional and superficial social interaction.

On June 12, 2014, state agency psychological consultant Joseph A. Shaver, Ed.D., reviewed Claimant's record and opined that Claimant is not disabled (Tr. at 92). On May 5, 2015, Claimant's therapist, Wendy Hooten, M.A., of the Huntington Treatment Center, wrote a letter to Claimant's attorney noting that she had no illicit drug screens since March 2, 2015, and had attended group and individual therapy (Tr. at 367).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the decision of the ALJ is not supported by substantial evidence because the ALJ's residual functional capacity (RFC) evaluation did not address all of Claimant's

limitations (ECF No. 8). Claimant argues that the ALJ failed to properly consider the opinion of the vocational expert (VE). Claimant avers that the VE testified at the hearing that Claimant is unable to engage in substantial activity. (*Id.*)

In response, Defendant asserts that substantial evidence supports the ALJ's evaluation of Claimant's RFC (ECF No. 9). Defendant avers that the ALJ found that the evidence of record supported a finding that Claimant was capable of simple, routine tasks in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, workplace changes and occasional interaction with the public, coworkers and supervisors. (*Id.*) Additionally, Defendant asserts that substantial evidence supports the ALJ's reliance on the VE's response to the hypothetical question at the hearing that contained all of Claimant's credibly-established limitations supported by the record. (*Id.*)

## Claimant's Testimony

Claimant testified that she could not work because she gets aggravated and has panic attacks, has a poor memory and has difficulty concentrating and focusing (Tr. at 38, 46-47, 216, 226). She also testified that she used drugs from time to time since her alleged onset date of disability and last used drugs two months prior to the hearing, although she has had some backslides since 2013 (Tr. at 56). Claimant testified that she could not get a job because she needed to get her GED (Tr. at 35).

Claimant indicated that her partner[1] does most of the housework and cleaning and she goes to libraries and churches for clothing and services (Tr. at 40, 212, 223). She also stated that she goes to gas stations, church and the Salvation Army for food and shelter (Tr. at 212, 223).

---

[1] Claimant testified that "I always try to find somebody to get with that will help me. I've never been by myself, as in – far as in relationships. I always try to find somebody to take care of me, even if I don't want to be with them. Or I don't like them, like this woman here" (ECF No. 40).

Claimant testified that she had no difficulty caring for her personal hygiene (Tr. at 60). Claimant had a driver's license (ECF No. 32). She testified that she did not drive because she did not have a car, although she previously reported that she did not drive due to anxiety (Tr. at 32, 213, 224). She sometimes watches television and enjoys drawing and coloring (Tr. at 58, 214, 225).

Claimant asserted that she had difficulty getting along with others and with trusting people, she reported that she stayed with friends and family, although she claimed difficulty with getting along with others and trusting people. She also claimed that she was married and continued to live with her partner even after she was separated (Tr. at 30-31, 214, 222). She also attended group therapy for alcohol and drug abuse for an hour every week (Tr. at 44).

<u>Vocational Expert Testimony</u>

Douglass Pruding, a Vocational Expert (VE), also testified at the hearing (Tr. at 64-66). The ALJ provided a hypothetical question where an individual with Claimant's age, education, and vocational experience had no exertional limitations but must avoid concentrated exposure to extreme cold and extreme heat, irritants (such as fumes, odors, dusts, gases, and poorly ventilated areas); was limited to simple, routine tasks in a work environment free of fast-pace production requirements, involving only simple work-related decisions with few, if any, work place changes; and would be capable of occasional interaction with the public, coworkers, and supervisors (Tr. at 64-65). Mr. Pruding testified that such an individual could perform the representative jobs of hand packager, electronics worker, bottling wine attendant, vehicle driver and surveillance system monitor (Tr. at 65-66). Mr. Pruding also testified that employers would tolerate one absence per month and no more than 10% off-task behavior per working hour (Tr. at 66).

## RFC

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179–80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Claimant asserts that the ALJ failed to appropriately consider her mental impairments in assessing her RFC. Claimant argues that the ALJ's RFC assessment does not include a complete determination of her mental limitations, based on the IQ testing performed by the consulting psychologist Penny Perdue, M.A. (ECF No. 8). Claimant asserts that her test results and diagnosed medical impairments "closely approach the criteria set forth in Listings 12.02, 12.04, 12.05 and 12.06. (*Id.*) This is the extent of Claimant's argument that the ALJ's RFC failed to address limitations. Claimant did not explain how "closely" satisfies criteria in the Listings is the same as meeting the criteria in the Listings. Additionally, Claimant did not explain what mental limitations the Administrative Law Judge should have included.

A RFC refers to the most a claimant can still do despite her limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. § 416.945(a). The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3). For cases at the hearing level, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. § 416.946. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

In the present case, substantial evidence supports the ALJ's RFC assessment, where he opined that despite her limitations, Claimant retained the mental abilities to perform simple, routine tasks in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, workplace changes and occasional interaction with the public, coworkers and supervisors (Tr. at 15-18).

In making this assessment, the ALJ reviewed the medical and other evidence of record. (*Id.*). The ALJ reviewed Claimant's treatment records at the Prestera Center, where Claimant was treated for mental health issues (Tr. at 17). The ALJ noted that on October 25, 2013, Dr. Soleymani indicated that Claimant was doing better since taking Trazodone; she was not as depressed or anxious; and she was sleeping well with Seroquel (Tr. at 17, 325). Likewise, the ALJ discussed that on November 22, 2013, Claimant reported that Trazodone was helping with her anxiety, although she reported side effects of swelling in her fingers (Tr. at 17, 329). At that time, Claimant reported only mild issues with depression or anxiety (Tr. at 17, 329). Her affect was brighter, and mental status examination revealed that she was appropriate and well groomed, was oriented x4, and had calm and normal motor activity, normal eye contact, cooperative attitude, no suicidal or homicidal thoughts, no hallucinations, appropriate thought

content and relevant thought process, a better mood, and an appropriate, euthymic affect (Tr. at 329-330).

By December 6, 2013, Claimant was not taking Trazodone and requested that Dr. Soleymani restart that medication because it helped with her anxiety (Tr. at 17, 333). Despite this request, Dr. Soleymani noted that Claimant reported no major problems with depression, mood swings, irritability or anxiety (Tr. at 17, 333). She seemed to be doing well, and reported that she was not abusing (Tr. at 335). A mental status examination on December 6, 2013, revealed that Claimant was appropriate and well groomed, was oriented x4, had calm and normal motor activity, normal eye contact, cooperative attitude, no suicidal or homicidal thoughts, no hallucinations, appropriate thought content and relevant thought process, a better mood, and an appropriate, euthymic affect (Tr. at 333-334). The ALJ addressed Claimant's improvement when complying with treatment and found that the record did not support additional limitations (Tr. at 17). *See* 20 C.F.R. § 416.929(c)(3)(iv) (noting that the ALJ may consider the effectiveness of medications used to alleviate symptoms); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Additionally, the ALJ supported his RFC assessment with the opinions of the state agency psychological examiners Drs. Capage and Shaver, who reviewed the treatment notes and consultative examination, and opined that despite her impairments Claimant was capable of learning and performing at least simple, routine, unskilled, 2 to 3 step work-related activities; low stress tasks, with no complex decision making, no supervisory responsibilities, and no fast-paced production quotas; and a setting that called for no more than occasional and superficial social interaction (Tr. at 78, 87, 91). Such limitations were consistent with the RFC assessment,

where Claimant was restricted to only simple, routine tasks in a work environment free of fast-paced production requirements and involving only simple, work-related, decisions with few, if any, workplace changes and occasional interaction with the public, coworkers and supervisors (Tr. at 16). The ALJ reasonably relied on these assessments in crafting the RFC. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (stating that state agency consultants are "experts" in Social Security and their opinions "merit significant consideration") *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record."); Social Security Ruling (SSR) 96-6p, 1996 WL 374180.

In addition to the state agency assessments showing Claimant could work, with appropriate limitations, the ALJ properly considered the consultative examination of Ms. Perdue (Tr. at 14, 17). The ALJ acknowledged that while Claimant's IQ testing suggested lower than average intellectual functioning, the testing was a slightly lower estimate of Claimant's cognitive functioning due to her slow pace and possible anxiety, and was not consistent with her ability to express herself (Tr. at 17, 363). The ALJ noted that, despite her IQ scores, Claimant was cooperative; interacted with the examiner in an appropriate fashion; had adequate eye contact; adequate verbal responses; normal and quiet speech; was oriented to person, place, date, and situation; and had a full affect; although she displayed a somewhat depressed mood with anxiousness during testing; and poor insight and impaired judgment (Tr. at 362). Her immediate memory was normal, and she recalled 4 of 4 unrelated words; although her recent memory was deficient, recalling only 1 of 4 unrelated words after a 5 minute delay; and she had some difficulty relating dates of her history and a scaled score of 2 on the digit span test, indicative of deficiencies in concentration. (*Id.*) Ms. Perdue concluded that Claimant

was able to understand and follow the simple verbal instructions (Tr. at 363). The ALJ recognized that while the testing demonstrated some limitations, such limitations were not inconsistent with the performance of simple, routine tasks in a work environment free of fast-paced production requirements and involving only simple, work-related, decisions with few, if any, workplace changes and occasional interaction with the public, coworkers and supervisors (Tr. at 17). The ALJ included these credibly-established mental limitations in the RFC.

Claimant's argument that her diagnosis, or her IQ scores on their face, establish further limitations, is without merit (ECF No. 8). The Fourth Circuit Court of Appeals has recognized that a diagnosis is insufficient to prove disability – rather, there must be resultant functional limitations precluding a claimant's ability to work. *Gross*, 785 F.2d at 1166. Indeed, the ALJ recognized that despite Claimant's IQ scores and diagnoses, the evidence revealed that Claimant had essentially normal mental status examinations, the ability to understand and follow simple instructions, and she improved when she complied with treatment and did not abuse drugs, as discussed above (Tr. at 17). The ALJ then explicitly stated that the RFC, detailed above, accounted for all of Claimant's limitations in concentration, memory, task completion, and attention. (*Id.*) No further limitations were necessary. *See Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir.2006) (finding that an RFC limited the claimant to work that required little or no judgment and simple duties adequately accounted for a claimant's low IQ test scores, poor concentration, deficient memory, and difficulties handling instructions).

In the present case, Claimant fails to identify what mental limitations the ALJ supposedly ignored or failed to include in the RFC based on her alleged IQ scores or diagnoses (ECF No. 8). The ALJ sufficiently explained why the RFC assessment was supported by the record (Tr. at 15-18).

The ALJ evaluated the same records that Claimant urges the Court to reconsider and reasonably concluded that Claimant retained the ability to perform a limited range of simple, routine work, with additional restrictions with respect to production requirements, workplace changes and social interaction (Tr. at 15). Claimant essentially requests that this Court do what the law forbids: reweigh the evidence and substitute its findings for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

Furthermore, the ALJ was not required to accept the VE's testimony in response to the more restrictive hypothetical. *Clower v. Colvin*, No. 1:12-03483, 2014 WL 199259, at *9 (S.D.W. Va. Jan. 15, 2014) (ALJ was not required to adopt VE's response to hypothetical including a limitation to being off-task for 30% of the day, where such a limitation was not supported by the record); *see also Hazlett v. Colvin*, No. 2:13-cv-00538, 2014 WL 3845730, at *9 (W.D. Pa. Aug. 4, 2014) (ALJ need not accept a hypothetical where evidence did not support that claimant would be off task or absent at least one day per month).

Because the evidence failed to support that Claimant would be absent more than one day per week or be off task more than 10% of the workday, the ALJ was not required to accept the VE's answer to such a hypothetical question. Therefore, the undersigned respectfully recommends that the District Judge find that the ALJ appropriately relied on the VE's testimony, that is supported by the evidence of record. Additionally, the undersigned respectfully recommends the District Judge find that substantial evidence supports the ALJ's assessment of Claimant's RFC, therefore, Plaintiff's Brief in Support of Judgment on the Pleadings should be denied (ECF No. 8).

Conclusion

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that substantial evidence supports the ALJ's evaluation of Claimant's RFC, that substantial evidence supports the ALJ's reliance on the VE's response to the hypothetical question and that the RFC contained all of Claimant's credibly established limitations supported by the record.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 8), **GRANT** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 9), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 17, 2018

_____
Dwane L. Tinsley
United States Magistrate Judge